1  PAUL BLAZEVICH, *In Pro Per*
   E. BLAZEVCIH, *In Pro Per*
2  Post Office Box 2256
   National City, California 91951-2256
3  Telephone (619) 261-3604

4  *In Propria Persona* for Plaintiff

5

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10                    'U8 CV 450   WQH WMc

11 **PAUL J. BLAZEVICH and**     ) Case Number: _____
   **E. BLAZEVICH,**             )
12                               ) **COMPLAINT FOR:**
                  Plaintiffs,    )
13                               ) **(1)  SIXTH AMENDMENT**
          versus                 )       **VIOLATIONS;**
14                               ) **(2)  MALICIOUS PROSECUTION;**
                                 ) **(3)  ABUSE OF PROCESS;**
15 **UNITED STATES OF AMERICA, an** ) **(4)  FALSE IMPRISONMENT;**
   entity; **UNITED STATES ATTORNEY'S** ) **(5)  CONSPIRACY TO COMMIT**
16 **OFFICE FOR THE SOUTHERN**    )       **OFFICIAL OPPRESSION;**
   **DISTRICT OF CALIFORNIA, a**  ) **(6)  NEGLIGENCE;**
17 government entity; **IMMIGRATION AND** ) **(7)  INTENTIONAL INFLICTION OF**
   **CUSTOMS ENFORCEMENT,** a     )       **EMOTIONAL DISTRESS;**
18 government entity; **KAREN HEWITT,** ) **(8)  NEGLIGENT INFLICTION OF**
   in her individual capacity and as United States) **EMOTIONAL DISTRESS;**
19 Attorney for the Southern District of ) **(9)  FAILURE OR REFUSAL TO**
   California, **BARBARA MAJOR-GLUCK,** )       **TRAIN, SUPERVISE, AND**
20 in her individual and former capacity as )       **DISCIPLINE;**
   Assistant United States Attorney; **MICHAEL** ) **(10) MC DADE AMENDMENT**
21 **FOSTER,** in his individual and capacity as )       **VIOATIONS;**
   United States Customs Agent; **WILLAM A.** ) **(11) *EX POST FACTO* CLAUSE**
22 **HALL,** in his individual and capacity as )       **VIOLATIONS;**
   Assistant United States Attorney; and **DOES** ) **(12) LOSS OF CONSORTIUM;**
23 1 through 20 inclusive;          ) **(13) *BIVENS* VIOLATIONS;**
                                 ) **(14) DECLARATORY RELIEF, and for**
24                Defendants.     ) **(15) TEMPORARY RESTRAINING**
                                 )       **ORDER AND INJUNCTION.**
25 _____ )
                                     [ Jury trial demanded]
26

27     Plaintiffs Paul Blazevich and E. Blazevich, for their causes of action against the

28 Defendants, and each of them, allege as follows:

---

Civil Rights Complaint                    1                    *Blazevich v United States, et al*

1

## NATURE OF THE ACTION

2      This civil rights lawsuit is brought to ensure that the promise of the ability to present

3  evidence favorable to the accused, including the right to present and cross examine witnesses,

4  embodied in the Constitution of the United States, do not become meaningless guarantees for

5  persons accused of crimes by the federal government.

6      This action seeks to recover damages because the defendants who consist of the United

7  States government, its agencies, and its employees acting in both their individual and

8  professional capacities, illegally withheld, and are continuing to illegally withhold, exculpatory

9  evidence in a federal criminal action against Plaintiff Blazevich.   This unlawful withholding of

10  evidence caused Blazevich, among other things, to serve an additional 46 months in federal

11  prison, over and above what he would have had to serve but for Defendants' illegal withholding.

12      The conduct of the Defendants deprived Blazevich of the following rights, privileges, and

13  immunities secured to him by the Constitution of the United States:

14      (a) The right of plaintiffs to be secure against unreasonable search and seizure secured to

15          him under the Fourth Amendments to the Constitution of the United States.

16      (b) The right of plaintiff Blazevich to present evidence and witnesses favorable to his

17          defense, secured to him under the Sixth Amendment to the Constitution of the United

18          States.

19      (c) The right of plaintiff Blazevich not to be deprived of life, liberty, or property, without

20          due process of law, and the right to equal protection of the laws, secured buy Fourth,

21          Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States.

22      (d) The right of Plaintiff Blazevich not to be punished for laws which were not in

23          existence at the time of the commission of his crime, as secured under the

24          *Ex Post Facto* Clause of the Constitution of the United States.

23      The acts of Defendants were performed knowingly, willingly, intentionally, oppressively

24  and maliciously, and forced Plaintiffs to endure, among other things, severe and unnecessary

25  financial loss, mental anguish, and emotional distress along with loss of consortium.   For these

26  reasons, this action seeks general, special, and punitive damages in a sum that to this Court may

27  deem just and reasonable, for cost of suit and attorney's fees, and for such other relief as the

28  court may deem just and equitable.

**I. JURISDICTION AND VENUE**

1.    Plaintiffs bring this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) 2671-2680; *Bivens v Six Unknown Named Federal Agents*, 403 US 388 (1971); along with 28 U.S.C. §§ 1331; 1326; 1343(a)(3); 1346(b)(1); 1357; 1402; 1927; 2201; 530(b); 42 U.S.C. §§ 1983; 1985; and 1986, to redress the deprivation of rights guaranteed by the Constitution of the United States.  This Court has jurisdiction to entertain the matters herein under the foregoing sections, and because the Constitution confers the liberty and property rights which have been violated, and no statue exists to bar jurisdiction.

2.    Venue is proper under 28 U.S.C. §§ 1391(b)(1),(2), & (3), 1391(c), and 1391(e).

**II. PARTIES**

3.    At all relevant times, plaintiff Paul Blazevich, (hereinafter "Plaintiff") was a citizen of the United States of America, and was a resident of San Diego County, California.

4.    At all relevant times, plaintiff E. Blazevich was a citizen of the United States of America and resident of the County of San Diego, California, and is the wife of Plaintiff.

5.    Plaintiffs are informed and believe, and on that basis allege, that at all material times hereto, Defendant UNITED STATES OF AMERICA, (hereinafter "Government") is the United States Government, and is the plaintiff in the case of *United States v Paul Blazevich*, case number 99cr0471, filed in the United States District Court, Southern District of California.

6.    Plaintiffs are informed and believe, and on that basis allege, that at all material times hereto, Defendant UNITED STATES ATTORNEY'S OFFICE, (hereinafter "U.S. Attorney's Office) is an agency of the Government, and is vested with legal authority to enforce federal law on behalf of the Government.

7.    Plaintiffs are informed and believe, and on that basis allege, that at all material times hereto, Defendant IMMIGRATION AND CUSTOMS ENFORCEMENT (hereinafter "Customs"), is an agency of the Government, was formally known as "United States Customs Service," and is vested with legal authority to enforce federal law not only on behalf of the Government, but also under the direction of  the U.S. Attorney's Office.

1    8.    Plaintiffs are informed and believe, and on that basis allege, that at all material

2  times hereto, Defendant KAREN HEWITT (hereinafter "Hewitt"), is an individual, a licensed

3  attorney, an agent of the United States Attorney's Office, and the United States Attorney for the

4  Southern District of California, who was acting within the scope of her employment.  This

5  defendant is sued in her individual and official capacity.

6    9.    Plaintiffs are informed and believe, and on that basis allege, that at all material

7  times hereto, Defendant BARBARA MAJOR-GLUCK (hereinafter "Major"), is an individual, a

8  licensed attorney, a former prosecutor with the U.S. Attorney's Office, and who was the original

9  prosecutor in the federal criminal case of *United States of America v Paul Blazevich*, case

10  number 99cr0471-IEG, and was acting within the scope of her employment.  This defendant is

11  sued in her individual and official capacity.

12    10.    Plaintiffs are informed and believe, and on that basis allege, that at all material

13  times hereto, Defendant WILLIAM A. HALL (hereinafter "Hall"), is an individual, employed by

14  the U.S. Attorney's Office acting under the guise of Assistant United States Attorney, and who is

15  presently assigned to the federal habeas corpus case of *Blazevich v United States*, number

16  03cv1346-IEG (related to the above referenced criminal case of *U.S. v Blazevich*, number

17  99cr0471) and was acting within the scope of his employment.  This defendant is sued in his

18  individual and official capacity.

19    11.    Plaintiffs are informed and believe, and on that basis allege, that at all material

20  times hereto, Defendant MICHAEL FOSTER (hereinafter "Foster"), is an individual, and is or

21  was an agent for the United States Customs Service, was the Agent in Charge of the search of

22  Plaintiff's home, related U.S. v Blazevich 9cr0471-IEG, and was the custodian of the evidence

23  related to said case.  At all times relevant to the events mentioned herein, Agent Foster was

24  acting within the scope of his employment. This defendant is sued in his individual and official

25  capacity.

26    12.    Plaintiffs are ignorant of the true names and capacities of Defendants sued herein

27  as DOES 1 through 20 inclusive "Doe Defendants"), and therefore sues these said Defendants by

28

1   such fictitious names.  Plaintiffs will amend their complaint to allege the Doe Defendants' true

2   names and capacities when the same have been ascertained.

3      13.     Plaintiffs are informed and believe, and thereon allege that each of the Defendants

4   herein named was the employer, partner, principal, agent, representative, beneficiary, manager,

5   director, receiver,  trustee, officer, and/or employee of each of the remaining Defendants, and

6   was at all times herein referenced, acting within the course, scope, and purpose of such agency,

7   partnership, representation, management, and/or employment, and with the actual or constructive

8   authority and ratification, expressed or implied, of the remaining co-defendants and each of

9   them.

10     14.     Plaintiffs are informed and believe, and on that basis allege, that each of the

11  defendants authorized, participated in, consented to, and otherwise ratified the actions and

12  inactions of the other named defendants described above and herein, and are jointly and severally

13  responsible in some manner for the illegal withholding of evidence, along with and other

14  declarations, statements, pleadings, transactions, events, and occurrences herein alleged, and for

15  any liability to Plaintiffs herein.

16     15.     Each of the acts of defendants alleged in this complaint were done by defendants

17  under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the

18  United States of America, and under the authority of their office as agents of the Government.

19

20             **III.  ADMINISTRATIVE PROCEDURE IS NOT REQUIRED**

21     16.     Exhaustion of administrative remedies is not required due to the irreparable harm

22  that will come if Plaintiff is made to first exhaust remedies.    *See Bastek v Federal Crop*

23  *Insurance Corporation*, 145 F3d 90 (1998);  *McCarthy v Madigan*, 503 US 140, 145-46 (1992).

24  A government agency's procedures may be challenged without exhaustion where irreparable

25  harm may result from the failure to promptly hear the challenge. *McCarthy,* 503 US 140;  *Coit*

26  *Independence Joint Venture v. Federal Savings & Loan Insurance Corporation*, 489 U.S. 561,

27  585 (1989).   The plaintiff in this action, because of the date of his 2007 release from prison for a

28  conviction related to Internet child pornography, is being subjected to enforcement of the 2006

1  residency restrictions of Proposition 83, requiring him to separate from his family to live over

2  2000 feet away from a school or park.   Because of the density of schools and parks in San

3  Diego, there is virtually no place for Plaintiff to live that is suitable for him and his family.

4  Plaintiff has been told by his probation officer that if Plaintiff does not comply with the 2000 feet

5  residency restriction by March 16, 2008, he will be in violation of the terms of his supervised

6  release, and will be subject to being returned to prison.   Plaintiff as a result has been forced to

7  find housing separate from his wife and family, in a substandard single room occupancy building

8  infested with bugs.    This is causing Plaintiffs to incur not only additional expense, but also the

9  ongoing loss of consortium of each others' care and companionship, and the destruction of the

10  family unit.  If the Defendants comply with their discovery obligations, evidence from

11  Plaintiff's criminal action which has been previously illegally withheld from Plaintiff will be

12  brought to light, and Plaintiff's sentence will be required to be corrected.   Since Plaintiff's

13  corrected sentence would have ended in approximately 2003, before the 2006 law came into

14  existence, the 2000 feet residency restriction would be inapplicable, and Plaintiff and his wife

15  and family could reside together in suitable housing.    Accordingly, because of the ongoing

16  irreparable harm, Plaintiffs are exempt from exhaustion of remedies.

17         17.     Exhaustion of remedies is also not required because to do so would

18  unquestionably be futile.   *Honig v. Doe*, 484 U.S. 305, 325–329; *Diaz v. United Agricultural*

19  *Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir.1995).   Plaintiff, as

20  outlined in the body of this complaint, has tried over and over again using several different

21  vehicles and on every level, to get the Government, its agencies, and its agents, to produce the

22  evidence it has and is illegally withholding in Plaintiff's criminal action.    The Defendants have

23  made it unmistakably clear over by six years worth of repeated and ongoing refusals to produce

24  the evidence at issue in the case, that they have no intention to change their policy or provide the

25  relief requested in this action related to the production of evidence.  In this regard, it is absolutely

26  futile for Plaintiff to file any administrative remedy, and therefore exhaustion is justifiably

27  excused.

28  / /

Civil Rights Complaint                    6                    *Blazevich v United States, et al*

1       18.     Exhaustion of remedies would also be inadequate.  Plaintiff seeks monetary

2   damages in this action, which is something that the Government agencies themselves, cannot

3   award.    Accordingly, there is no reason to file an administrative remedy when there can be no

4   adequate relief, and therefore exhaustion should be excused.

5       19.     This action also raises constitutional challenges to a policy and/or regulation

6   being imposed on Plaintiff, and according, Plaintiff can additionally avoid exhaustion

7   requirements.  *Howard v. FAA*, 17 F.3d 1213, 1218 (9th Cir.1994) (Constitutionality outside the

8   cognizance of the agency and hence exhaustion unnecessary.).   Also because the damage to a

9   constitutional right cannot be remedied by a post-deprivation review in the courts, an exception

10  to the exhaustion requirement is warranted.  *American-Arab Anti-Discrimination Committee v.*

11  *Reno*, 70 F.3d 1045, 1058 (9th Cir.1995).

12      20.     Exhaustion is as well not necessary because the agency is biased or has otherwise

13  predetermined the issue.  *Bethesda Hospital Association v. Bowen*, 485 U.S. 399, 405, (1988);

14  *Atlantic Richfield Co. v. United States Doe*, 769 F.2d 771, 782 (D.C.Cir.1984) ("[E]xhaustion is

15  not required where, as here, it is 'highly unlikely that the [agency] would change its position

16  …'.").   As stated above, Plaintiff has continuously over the past six years attempted to get the

17  agencies to produce the evidence related to Plaintiff's criminal case, and the agencies have

18  continuously for the past six years refused each and every one of these requests.   The agencies,

19  contrary to clear law on the matter, have unquestionably predetermined that they will not provide

20  the disclosure relief requested, and will only do so if it is ordered to do so by a court.   Since the

21  matter related to production of evidence and disclosure of exculpatory information has already

22  been determined by the agencies, the filing of administrative remedies would be completely

23  futile and should thus be excused.

24      21.     *Bowen v. New York* 476 U.S. 467 (1986) additionally allows a district court to

25  make an *ad hoc* determination that equities justify waiver of the exhaustion requirement.   The

26  Supreme Court in *Bowen* stated that practical arguments supporting the exhaustion doctrine

27  "do not aid the Court in deciding when exhaustion should be excused."  *Id.* at 486.   In this

28  respect, equities should be applied to the instant case before the Court.   Regarding the seized

1  evidence at issue in this case which is being illegally withheld by the Defendants, Plaintiff has

2  continually challenged the agency's procedures by way of filing multiple pleadings in his federal

3  habeas corpus action over the last six years requesting disclosure of that evidence.    Through the

4  Defendants' repeated and continual rejection of Plaintiff's requests, the agencies have made clear

5  they have no intention of providing any relief to Plaintiff or doing anything but keeping the

6  exculpatory information contained on seized evidence secret, regardless of the past and ongoing

7  irreparable harm to Plaintiff.    The principles of equity certainly justify waiver of the exhaustion

8  requirement in this case.

9      22.    The Supreme Court has as well not required exhaustion when unreasonable

10  administrative delay has rendered the administrative remedy inadequate. *Gibson v. Berryhill*, 411

11  U.S. 564, 575 n. 14 (1973) (Delay often renders the administrative remedy inadequate.); *Smith v.*

12  *Illinois Bell Tel. Co.*, 270 U.S. 587, 591–592 (1926) (An applicant need not wait "indefinitely"

13  before seeking relief.).    Plaintiff has been diligently pursuing this matter with the agencies for

14  over six years with no success. Plaintiff has been, and is continuing to be, irreparably harmed.

15  The agencies have already repeatedly determined that they will not provide the requested relief,

16  and as it relates to the award of damages, cannot provide the relief through administrative

17  appeals. There is no justifiable reason to further delay adjudication of the issues.    Indeed,

18  because of the continuing harm to Plaintiff's even if there were some legitimate interests that

19  may favor exhaustion, Plaintiffs' individual interests by far outweigh any of those countervailing

20  interests.    Exhaustion of administrative procedure should be excused.

21      23.    This case also seeks monetary relief, and the agency's administrative remedy

22  furnishes no effective remedy at all.    Accordingly, it is therefore improper to impose an

23  exhaustion requirement.    *McNeese v. Board of Education for Community Unit School Dist.* 187,

24  373 U.S. 668, 675 (1963);    *Montana Bank v. Yellowstone County*, 276 U.S. 499, 505 (1928).

25      24.    For all of the foregoing reasons, Plaintiffs are exempt from administrative

26  procedure, and should otherwise be excused from exhaustion of administrative appeals.

27  / /

28  / /

## IV.  GENERAL ALLEGATIONS

25.    In 1999, Plaintiff was convicted of aiding and abetting transportation and possession of Internet child pornography.   At the sentencing hearing for that conviction, Defendant Major was the prosecutor in that case and sought a 360month to life sentence, based in part on the United States Sentencing Guidelines' "Pattern of Activity" enhancement, which can only be applied if the defendant committed two acts of the sexual exploitation of a minor. Defendant Major on behalf of the U.S. Attorney's office sought to satisfy the first occurrence of this enhancement with nude photographs taken by Plaintiff of "PTPO-H" (which name refers to computer images made from those photographs electronically tagged "PTPO-H*.jpg").   The second occurrence of the Pattern of Activity enhancement was sought to be fulfilled with nude photographs taken by Plaintiff of a person referred to in Plaintiff's federal habeas corpus action as "MB."

26.    At sentencing, Plaintiff's court appointed counsel sought a continuance so that counsel could prepare.  The court denied counsel's request for continuance, explaining to counsel that the matter had been pending for months, and counsel had more than ample time to ready himself.  By that time, counsel had already submitted a declaration that he prepared for Plaintiff explaining that Plaintiff had copied PTPO-H's identification card, and that she was 19 in the photographs.    Plaintiff was also allowed to speak during allocution and explained that the negative filmstrip which contained MB's photographs prove beyond any doubt that the Government had no evidence whatsoever to prove that MB was a minor in the photographs. Nonetheless, since Plaintiff's court counsel did not have the filmstrip at sentencing for the court to review, the government's meager support effectively went unopposed, and the district court found that both PTPO-H and MB were minors in the photographs.  As a result, the Pattern of Activity enhancement was applied, nearly doubling the sentence which Plaintiff would have otherwise received.  (Plaintiff ended up receiving a 110 month sentence, 46 months of which was because of the application of the Pattern of Activity enhancement.)

27.    Plaintiff subsequently wrote his prosecutor, Defendant Major, numerous letters explaining the exculpatory value of the evidence.  Defendant Major never responded.

28.    Plaintiff thereafter filed a petition to correct his sentence under Title 28 of the United States Code, Section 2255, along with a sworn supporting affidavit once again explaining that both filmstrips containing the photographs which provided the basis for the Pattern of Activity enhancement were exculpatory.   The district court responded and acknowledged that if Plaintiff's allegations about the existence of PTPO-H's identification card proving her age was on the filmstrip, it would entitle Plaintiff to relief, and therefore ordered the government to produce the filmstrips containing PTPO-H's photographs.

29.    However, instead of producing the photographs, prosecutor Major, in violation of the Federal Rules of Evidence, submitted a declaration from Defendant Foster (who was the Customs Agent in charge of the search and seizure at Plaintiff's home), which stated that Defendant Foster had and looked at the specific filmstrips at issue, but that the filmstrips contained nothing exculpatory.[1]

30.    Based on the Government's declaration, the district court denied relief, citing *Williams v Woodford*, 306 F3d 655, 688 (9th Cir. 2002) for the proposition that "a court ruling on a habeas petition may resolve the issue before it by...relying on...affidavits." *Id.*

31.    Plaintiff next filed a motion asking the district court to reconsider its denial of a hearing, asserting that the only way the court could conclusively resolve the issue about what is on a filmstrip, was to take a moment and look at the filmstrip itself.  Nevertheless, the court denied the motion.   The district court also refused to issue a certificate of appealability to allow Plaintiff to appeal.   Plaintiff then sought a certificate of appealability directly from the Ninth Circuit Court of Appeals, who instantly recognized the problem and granted Plaintiff's request to appeal.   Also during this time, Plaintiff filed numerous pleadings all seeking the production of the exculpatory evidence at issue.   All of these motions were denied by the district court. Plaintiff thereafter filed his appeal brief.

---

[1] To submit an affidavit about what was on the filmstrip, without attaching a copy of the original filmstrip was in violation of the Best Evidence Rule, Federal Rule of Evidence 1002. *See* Fed.R.Evid. 1002: "To prove the content of a...photograph, the original...photograph is required." "An original 'includes the negative'" under 1002's meaning of "photograph." *U.S. v Levine*, 546 F2d 658;  *U.S. v Miller*, 771 F2d 1217, 1238 n.8 (9th Cir. 1985) ("Rule 1002 requires the original be offered into evidence," and finding Fed.R.Evid. 1002 violated when statements were given about what was depicted on a microfiche, without the original microfiche submitted to the court, and copy given to defense.)

32.    The Government, however, in its response to Plaintiff's appeal brief, represented to the Court of Appeals that the Government never seized the filmstrip in the first place.    Based on that blatant lie and material misrepresentation by the Government, the Court of Appeal denied relief.

33.    Plaintiff was subsequently released from prison after completing the entirety of his improper 110 month sentence.

34.    Plaintiff afterward wrote letters to Defendant Hall and Defendant Hewitt, among others in the U.S. Attorney's Office, reminding them that they and the Government had violated and/or were continuing to violate Plaintiff's constitutional rights under *Brady v Maryland*,  373 U.S. 83 (1963), and explained that *Brady* makes clear that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."    Plaintiff additionally pointed out that in *Clay v United States*, 519 US 482 (2002),  the Supreme Court found that a habeas case is not final until the a Plaintiff's ability to file for appeal has expired, or a Plaintiff's ability to file petition for certiorari had expired, or when a Plaintiff's certiorari petition had been denied, whichever is later.    On that basis, Plaintiff demonstrated since his deadline to file for certiorari had not passed, Plaintiff was still on habeas review.    Plaintiff then explained this fact was significant because the Ninth Circuit recognized in *Thompson v Calderon*, 151 F3d 819, 935 n.12 (9th Cir. 1998) that "[t]he *Brady* duty is an ongoing one, which continues to bind the prosecution throughout [a defendant's] habeas proceedings." And further, Plaintiff underscored the fact that the Supreme Court made clear in *U.S. v Valenzuela*, 458 US 866 (1998) that "[t]he only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files."    In concluding the multitude of letters sent by Plaintiff, Plaintiff asserted that based on the clear foregoing case law from the Ninth Circuit and Supreme Court, since Plaintiff was still on habeas review, the Government was still obligated to provide complete disclosure of its files even in the absence of a court order to do so.    Notwithstanding these requests and the clear law with regard to the

1  Government's disclosure obligations, the U.S. Attorney's office did not respond, did not produce

2  the evidence, and otherwise did not move to correct Plaintiff's sentence.

3       35.     Since Plaintiff over served his sentence by 46 months, and Plaintiff's term of

4  supervised release is 36 months, Plaintiff subsequently filed a motion requesting his supervised

5  release to be terminated because of the illegal withholding of evidence.  *See U.S. v Blake*, 88

6  F3d 824 (9th Cir. 1996) (requiring supervised release be credited for all time over-served in

7  prison).  In that motion, Plaintiff pointed out yet again that the Government was still

8  withholding evidence, and using the aforementioned citations to once more set forth that since

9  Plaintiff was still on habeas review, the Government was still required to provide full discovery

10 of the evidence in its possession.  Plaintiff also explained in that motion that the district court's

11 previous denial of a hearing on the matter on the basis of *Williams v Woodford* was an error,

12 since *Williams* only allowed resolution of the issue on affidavits because additional oral

13 testimony would not "offer [a] reasonable chance of altering [the court's] view of the facts."

14 Plaintiff explained that his case is clearly distinguished since additional hard evidence (i.e.,

15 PTPO-H's proof of age) *would* "offer [a] reasonable chance of altering [the court's] view of the

16 facts," and indeed would require the court to alter its view of the facts.  Lastly, Plaintiff pointed

17 out that *Machibroda v U.S.*, 368 US 487, 495 (1962) provides the controlling legal authority on

18 the matter. Quoting the Supreme Court of the United States, Plaintiff's pleading asserted that the

19 Supreme Court in *Machibroda* made clear: "'[t]he government's contention that [a defendant's]

20 allegations are improbable and unbelievable, *cannot serve to deny [a defendant] the ability to

21 support his allegations by the evidence.*'"

22       36.     At the hearing on the motion to terminate supervised release, the Government

23 (who by this time had assigned Defendant Hall as the lead prosecutor), once again made the

24 material misrepresentation that the filmstrips which Plaintiff were requesting were never seized,

25 and did not exist.  Plaintiff responded that this repeated misrepresentation by the Government

26 was a blatant lie, since Defendant Foster had already filed a sworn declaration with the court

27 explaining that Foster had and looked at the specific evidence at issue.  As a result of the

28

1  testimony and arguments presented, the Court ordered the Government to produce the filmstrip

2  for an *in camera* review.

3      37.    In a pleading entitled "UNITED STATES' RESPONSE TO COURT-ORDERED

4  INQUIRY CONCERNING DISCOVERY," the Government stated "[t]his Court also ordered

5  the Assistant U.S. Attorney assigned to this case to undertake an inquiry concerning the

6  existence of any filmstrips or photographs of PTPO-H."  However, in that same response, the

7  prosecutor also claimed "[t]he assigned U.S. Attorney is unsure where the Court wanted him to

8  undertake a general inquiry about the filmstrips or photographs of PTPO-H, or to specifically

9  produce them for an *in camera* review."  Defendant Hall went on about how he and the

10  Government should not be made to inquire or produce the evidence.

11      38.    Based on the Governments pleading, the district court altered its order requiring

12  the Government to produce the filmstrip, and denied Plaintiff's motion.

13      39.    Plaintiffs' position is that the law with regard to the Government's discovery

14  obligations is inescapable:   Complete disclosure of the Government's files was and is required

15  during Plaintiff's habeas review, particularly upon notice of the exculpatory value of the

16  evidence, irrespective of any court order to do so.

17      40.    Plaintiff subsequently attempted to file a complaint with the state bar against

18  Defendant Hall, but found that Defendant Hall was not a member of the bar and not licensed to

19  practice law.

20

21  **V.  CAUSES OF ACTION**

22  **COUNT I**
    **SIXTH AMENDMENT VIOLATIONS**
23  **(against all Defendants)**

24      41.    Plaintiffs hereby incorporate by this reference, the entirety of the previous

25  paragraphs in this complaint as though the same were set forth herein in full.

26      42.    The Sixth Amendment of the Constitution of the United States guaranteed

27  Plaintiff in his federal criminal action the right "to have compulsory process for obtaining

28  witnesses in his favor."  That means that a defendant has a right to present his defense including

1 | and to call witnesses favorable to him without interference by the prosecutor or other agencies of

2 | the government.  "The right to offer the testimony of witnesses, and to compel attendance, if

3 | necessary, is in plain terms the right to present a defense…[and] is a fundamental element of due

4 | process." *Washington v Texas,* 388 US 12 (1967).    However, the acts, inactions, and

5 | omissions of Defendants described herein, deprived Plaintiff of that right.

6 |     43.    Concerning PTPO-H, by withholding a photograph of PTPO-H's identification

7 | card, Defendants have prevented Plaintiff from obtaining and presenting a witness in his favor,

8 | to his detriment, and causing plaintiff to suffer damages.   The Sixth Amendment to the

9 | Constitution of the United States also guaranteed Plaintiff in his federal criminal trial to be able

10 | to present evidence favorable to Plaintiff.   The actions, inactions, and omissions, of Defendants

11 | as described within this complaint, particularly as it relates to withholding and secreting the

12 | exculpatory negative filmstrips seized from Plaintiff, additionally deprived Plaintiff of the

13 | guarantees of the Sixth Amendment of the Constitution of the United States, and caused

14 | Plaintiffs to suffer damages to be ascertained according to proof at trial.

15 |     44.    At all times mentioned herein, Defendants acted willfully with the wrongful

16 | intention of injuring plaintiffs and for an improper and evil motive amounting to malice in that

17 | the afore-referenced tortious and criminal conduct was intentionally, oppressively maliciously,

18 | and wantonly committed by Defendants' with the intended purpose to cause harm to plaintiffs

19 | herein and involved reckless or callous indifference to Plaintiff's federally protected rights.

20 | Plaintiffs are thus entitled to recover punitive damages from Defendants.

21 |

22 |                                   **COUNT II**
                                   **MALICIOUS PROSECUTION**
23 |           **(against Government, U.S. Attorney's Office, and MAJOR)**

24 |     45.    Plaintiffs hereby incorporate by this reference, the entirety of the previous

25 | paragraphs in this complaint as though the same were set forth herein in full.

26 |     46.    Defendants' illegal withholding of evidence resulted in Plaintiff's sentence being

27 | enhanced by approximately 46 months.   Plaintiff's improper sentence was caused by specific

28 | malicious and intentional acts and omissions of Defendants, and each of them, including the

1    individually named Defendants acting within the scope of their authority and with the course of

2    their employments, which included, but were not limited to the following:

3           a)    Seeking a sentencing enhancement, knowing of the existence of

4                 exculpatory evidence, which if disclosed would have prevented the

5                 application of the enhancement.

6           b)    After being placed on actual notice of the exculpatory nature of the

7                 filmstrips, repeatedly refusing to fulfill discovery obligations as required

8                 under *Brady v Maryland*, and the Sixth Amendment to the Constitution of

9                 the United States.

10          c)    Creating and/or submitting a perjured declaration in Plaintiff's federal

11                habeas action.

12          d)    Making material misrepresentations to both the district court and the Ninth

13                Circuit Court of Appeals that the negative filmstrips which were seized

14                from Plaintiff, and which were particularly referenced by agent FOSTER

15                in a sworn declaration filed in the district court, were never seized,

16                contributing to the denial of Plaintiff's federal habeas appeal.

17          e)    Continuing to withhold exculpatory evidence after repeatedly being put on

18                actual notice that disclosure was required under the law, and despite

19                numerous requests to disclose that evidence to the court.

20          f)    Maliciously and illegally fabricated, and concealed, or caused the illegal

21                fabrication and concealment of evidence in Plaintiff's criminal and federal

22                habeas cases.

23          g)    Such other improper acts as will be disclosed during discovery.

24    47.    The aforesaid improper, tortious, and illegal conduct on the part of the

25    Defendants, and the individually named Defendants acting within the scope of their employment,

26    did cause Plaintiff to be wrongfully incarcerated for a period of approximately 46 months and

27    suffer other damage.

28    / /

48.    During this period, plaintiffs suffered extreme mental and emotional anguish, chronic anxiety, abuse, humiliation, and chronic depression, any and all of which may be permanent, and other injuries, the full extent of which are undetermined at this time, and all to their great detriment and loss.

49.    As a further result of the aforesaid, Plaintiff was unable to attend to his usual duties and occupation and suffered a loss of assets, earnings, earning capacity, and future earning capacity, all to his great financial detriment and loss.

50.    As a further result of the wrongful conduct of Defendants and the individually named defendants and other agents, servants, workmen, and employees of the Government, Plaintiff has been required to expend and/or become liable for substantial sums of money for legal expenses of prosecuting this action, and will continue to be liable for and incur such expensed in the future, all of his great financial detriment and loss.

51.    Defendants' actions, inactions, and omissions alleged above, was knowing, willful, oppressive, and malicious, justifying an award of punitive damages.

**COUNT III**
**ABUSE OF PROCESS**
**(against all Defendants)**

52.    Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

53.    Subsequent to the criminal conviction of Plaintiff, Defendants received additional information and were placed on actual notice of Plaintiff's innocence with regard to the Pattern of Activity enhancement under the Federal Sentencing Guidelines, which Defendants disregarded and concealed for the purpose of causing Plaintiff's continued incarceration throughout the period stated.

54.    The actions, inactions, and omissions of Defendants, including but not limited to the individual defendants named herein, were improperly motivated in that said conduct was designed to be malicious, oppressive, and intended to, among other things, to promote career advancement with underhanded tactics and to obtain news recognition, with complete disregard for both the law and Plaintiff's rights.

55.    Defendants' use of the process of concealment, prosecution, and continuing incarceration as described above, was improper and employed by them in part, for the aforestated unlawful purposes, all of which constituted a perversion of the intended lawful purposes of said processes.

56.    As a direct and proximate result of the aforementioned actions of Defendants, plaintiffs have suffered damages in an amount to be proven at the time of the trial of this matter.

57.    Defendants' actions were willful, oppressive, and malicious, justifying an award of punitive damages.

**COUNT IV**
**FALSE IMPRISONMENT**
**(against Government, U.S. Attorney's Office, Customs, Major, and Foster)**

58.    Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

59.    The unlawful excessive incarceration and supervision of Plaintiff were caused by Defendants who knowingly and illegally withheld exculpatory evidence subject to mandatory disclosure under the law.    Defendants' improper acts were augmented with intentional false and perjured statements made and/or presented by Defendants, thereby causing deception for purposes of obtaining judicial authority to enforce the processes of the law and did knowing cause Plaintiff to be incarcerated and to remain improperly incarcerated for approximately 46 months, along with being subject to unnecessary supervision, and to suffer as a result of violations of the *Ex Post Facto* Clause as particularly set forth in this complaint.

60.    As a direct and proximate result of Defendants' concerted, unlawful, and malicious prosecution, Plaintiff was deprived his right to his liberty, due process of law, and equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States, and Plaintiffs have suffered damages in an amount to be proven at the time of the trial of this matter.

61.    Defendants' conduct was willful, oppressive, and otherwise motivated by an evil motive or intent, so as to justify punitive damages in an amount to be determined at the trial of this matter.

## COUNT V
## CONSPIRACY TO COMMIT OFFICIAL OPPRESSION
### (against all Defendants)

62.    Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

63.    After being sentenced, Plaintiff wrote letters to Defendants Major, the U.S. Attorney's Office, Customs, Foster, Hewitt, and Hall, among others, requesting disclosure of the aforementioned evidence to the court so that Plaintiff's sentence could be corrected.   Further, and for the same purpose, Plaintiff filed multiple pleadings in the district and appeals courts setting forth the relevant law with regard to the mandatory disclosure of exculpatory evidence by the Government and government officials, and again requesting that the exculpatory evidence which was seized from Plaintiff be disclosed to the court.

64.    It is inescapable that Defendants, and each of them, discussed between themselves, Plaintiff's letters and pleadings.  Yet despite Plaintiff's letters and pleadings requesting disclosure of the exculpatory evidence, along with Defendants' clear disclosure obligations under the law, Defendants repeatedly agreed among themselves and repetitively made the conscious election to deprive Plaintiff of that evidence, and to deprive Plaintiff of his constitutional rights.

65.    Defendants, agreed to inflict injury on Plaintiff, in that they made a concerted effort to act with a single plan, the general nature and scope of which was known to each co-conspirator-Defendant.

66.    The Defendants, during the period relevant hereto, individually and jointly, did act or purport to act in an official capacity, and by taking advantage of such capacity, knowing that their conduct was illegal, subjected Plaintiff to unlawful incarceration, mistreatment, disposition, and other infringement of his personal and property rights, and did detain and impede plaintiff in the exercise and enjoyment of rights and privileges to which he is entitled.

67.    As a direct and proximate result of the Defendants' conspiracy, Plaintiffs have suffered damages in an amount within the jurisdiction of this court to be proven at the time of trial.

68.     Defendants' conduct was willful, malicious, and oppressive, as to justify an award of punitive damages in amount to be determined at the time of trial.

**COUNT VI**
**NEGLIGENCE**
**(against all Defendants)**

69.     Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

70.     Defendants had a duty to, among other things:

    a.  follow the law;

    b.  comply with ethics rules;

    c.  disclose evidence favorable to Plaintiff related to Plaintiff's above referenced criminal and habeas actions, without request;

    d.  disclose such evidence, after being placed on actual notice of its existence;

    e.  take affirmative action to correct the improper sentence in Plaintiff's above referenced criminal case, after becoming aware there was an improper basis for Plaintiff's sentence;

    f.  make fair, forthcoming, and accurate statements concerning Plaintiff's evidence in Plaintiff's criminal case;

    g.  not commit perjury.

    h.  not use perjured, or unfair, or unforthcoming, or inaccurate statements with regard to the evidence in Plaintiff's aforementioned criminal action.

    i.  not cause Plaintiff to be falsely imprisoned;

    j.  not abuse the legal process;

    k.  not to commit acts which cause Plaintiff to be subject to laws which were not in existence at the time of Plaintiff's criminal conviction;

    l.  allow Plaintiff access to his property;

    m.  not deprive Plaintiff of his constitutional rights.

71.     Defendants, and each of them, negligently breached their above referenced duties to Plaintiff. These breaches were done with reckless disregard for the probability that severe

1    financial loss, emotional distress, and the deprivation of Plaintiffs' constitutional rights would

2    result from Defendants failure to carefully adhere to their duties.    Defendants knew or should

3    have known that there was a probability that injury would result from the failure to adhere to

4    their duties in the above respects.

5        72.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an

6    amount to be proved with particularity at the time of trial.

7        73.    Defendant's actions were willful, malicious, oppressive, and done with disregard

8    to Plaintiffs' statutory and constitutional rights so as to justify punitive damages.

9

10                                    **COUNT VII**
                  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
11                                  **(against all Defendants)**

12        74.    Plaintiffs hereby incorporate by this reference, the entirety of the previous

13    paragraphs in this complaint as though the same were set forth herein in full.

14        75.    The aforesaid conduct by Defendants constituted intentional, reckless, wanton,

15    and outrageous conduct which Defendants engaged in for the purpose of causing and/or with

16    knowledge that it would cause Plaintiffs emotional distress and mental anguish.

17        76.    Defendants then repeatedly agreed to deprive Plaintiff of discovery of exculpatory

18    evidence in Plaintiff's above referenced criminal and federal habeas corpus cases with full

19    knowledge that Plaintiffs were particularly vulnerable and would suffer physical and emotional

20    distress.

21        77.    Defendants also knew that Plaintiff would be returning to be with his wife and

22    family, and that his wife and family were relying on Plaintiff's financial, physical, and emotional

23    support.    Nevertheless, Defendants caused Plaintiff to be improperly incarcerated to the damage

24    of Plaintiffs.    Defendants knew their actions and inactions were certain to result in injury to

25    Plaintiffs.

26        78.    The tortious conduct of Defendants was intentional, extreme, outrageous,

27    malicious, and done with ill will, and exceeded the bounds of decency usually tolerated by a

28    civilized society.    Defendants' conduct was calculated to cause Plaintiffs to suffer severe mental

1  anguish and emotional and physical distress.   As an actual and proximate result of Defendants'

2  said conduct, Plaintiffs were physically and emotionally abused, forced to endure great pain,

3  mental anguish, shock, humiliation, loss of natural sleep, along with feelings of helplessness and

4  desperation.  Plaintiffs did, both directly and indirectly, sustain severe and serious injury to their

5  persons including, but not limited to, severe emotional distress, all to Plaintiffs' damage in a sum

6  within the jurisdiction of this court and to be shown according to proof.

7       79.    The aforementioned acts of the Defendants, and each of them, were willful,

8  oppressive, fraudulent, malicious, and despicable conduct, so as to entitle Plaintiffs to punitive

9  damages.

## COUNT VIII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (against all Defendants)

10
11
12       80.    Plaintiffs hereby incorporate by this reference, the entirety of the previous

13  paragraphs in this complaint as though the same were set forth herein in full.

14       81.    Defendants owed Plaintiff a number of duties as previously set forth.

15  Notwithstanding these duties, Defendants, and each of them, negligently breached those duties to

16  Plaintiffs.  These breaches were done with reckless disregard for the probability that severe

17  emotional distress would result from Defendants failure to carefully adhere to their duties.

18  Defendants knew or should have known that there was a probability that injury would result

19  from the failure to adhere to their duties in the above respects.

20       82.    The conduct of Defendants, and each of them, was outrageous and beyond the

21  bounds of decency, such that no reasonable person in a civilized society could be expected to

22  endure it.  Plaintiffs were physically and/or emotionally abused, forced to endure great pain,

23  mental anguish, shock, humiliation, loss of natural sleep, along with feelings of helplessness and

24  desperation, all to Plaintiffs' damage, in an amount to be shown with particularity at the time of

25  trial of this matter.

26  / /

27  / /

28

**COUNT IX**
**FAILURE OR REFUSAL TO TRAIN, SUPERVISE, AND DISCIPLINE**
(against Government, U.S. Attorney's Office, Customs, and Hewitt)

83.    Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

84.    Defendants Government, U.S. Attorney's Office, Customs, and Hewitt, are all responsible for the training instruction, supervision, and discipline of its agents, employees, and/ or representatives who were at all times relevant hereto, acting within the scope of their employment.

85.    Upon information and belief, said Defendants provided grossly inadequate training, instruction, supervision, and discipline to its agents, employees, and or representatives.

86.    These Defendants should have trained and instructed its employees, agents, and/or representatives to be aware that the law clearly and unquestionably requires full disclosure of any exculpatory evidence in their possession, without a court order for its production, without request and/or without demand, and mandates instant disclosure particularly after request.    Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline, should have had knowledge of the wrongs conspired to be done, as heretofore alleged, were about to be committed.   Defendants had power to prevent or correct the commission of said wrongs, could have prevented the wrongs with reasonable diligence, and knowingly, recklessly, or with gross negligence, failed or refused to do so.

87.    Defendants' inadequate training, supervision, and discipline of their employees, agents, and/or representatives subjected Plaintiffs to the ramifications of the illegal withholding of exculpatory information, and the deprivation of statutory and constitutional rights.

88.    Defendants directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the other individually named employee Defendants heretofore described.

89.    Defendants' employees, agents, and or representative's acts caused Plaintiff, among other things, to be unlawfully incarcerated for a period of approximately 46 months.

/ /

90.    As a consequence of Defendants' failure to train, supervise, and discipline its employees, agents, and/or representatives, Plaintiffs suffered and will continue to suffer loss of income, humiliation, anxiety, shame, despair, embarrassment, depression, mental pain, anguish, injury to their reputations, economic losses, in connection with the deprivation of their constitutional and statutory rights, all to Plaintiffs' damage in an amount to be proven at trial.

## COUNT X
## Mc DADE AMENDMENT VIOLATIONS
**(against Defendants U.S. Attorney's Office, Major, Hewitt, and Hall)**

91.    Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

92.    In addition to all applicable federal law, Defendants were required to comply and otherwise follow state and local laws and ethics rules, as required by the Mc Dade Amendment, and as codified in 28 U.S.C. § 530.

93.    Despite Defendants aforementioned duties and requirements, Defendants failed or otherwise refused to follow such duties, laws, and ethics rules.

94.    Such breaches of duties and failures and/or refusals to follow the directives as outlined in 28 U.S.C. § 530 and the Mc Dade Amendment, Plaintiffs suffered damages in amount which will be demonstrated according to proof at the time of trial.

95.    Because of said breaches of duty, law, and rules, Plaintiffs further requests sanctions as deemed appropriate by the court.

## COUNT XI
## *EX POST FACTO* VIOLATIONS
**(against all Defendants)**

96.    Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

97.    On November 7, 2006, the Sexual Predator Punishment and Control Act (also known as "Jessica's Law,") was passed by a voter-backed initiative as Proposition 83.   Among other things, the law amended Penal Code section 3003.5, subdivision (b) to prohibit all persons required to register as sex offenders in California from residing within 2,000 feet of any school

1    or park where children gather, and allows municipal jurisdictions to impose even harsher

2    restrictions.

3         98.    Plaintiff, because of his above referenced federal criminal conviction, is now

4    required to register as such a sex offender, pursuant to Penal Code section 290.

5         99.    After Plaintiff was released from prison Plaintiffs secured a residence in San

6    Diego. Subsequently, Plaintiff was told by his probation officer that the United States Probation

7    Department decided to enforce the 2000-feet residency exclusion zone as set forth in Proposition

8    83. Because of this, Plaintiff was required to move into a particular drug, prostitution, and bug

9    infested hotel in downtown San Diego, as directed by his probation officer. Although this

10   particular hotel was pre-approved by the Probation Department as being in over 2000 feet away

11   from a park or a school, demand was again made of Plaintiffs to move into another old, dirty,

12   dilapidated, and otherwise disgusting single room occupancy bus infested building because the

13   pre-approved hotel where Plaintiff was required to move was in fact not in compliance with the

14   2000 feet residency requirement of Proposition 83 (this previous mistake was due to the

15   unreliability of the maps used by the United States Probation Department to determine the

16   locations of schools and parks). Plaintiff is now being forced to be separated from his wife who

17   cannot reside in the buildings where Plaintiff is required to live, and is otherwise being prevented

18   from being with and taking care of his wife.

19        100.    Had Defendants not illegally withheld evidence and information about the

20   identify of witnesses related to Plaintiff's federal criminal and subsequent federal habeas corpus

21   cases, and had otherwise complied with their disclosure obligations under *Brady v Maryland* and

22   its progeny, Plaintiff would have been released from prison long before enactment of Proposition

23   83, and would not now be subject to that law, including the 2000-feet residency restriction. The

24   imposition of this law on Plaintiff is in violation of the *Ex Post Facto* provision of the

25   Constitution of the United States, which generally states that no person shall be subjected to

26   punishment which was not in existence at the time the accused committed his crime, and clearly

27   extends to punishment created after a person's release from prison.

28   / /

101.    The purpose of the law was punitive, the effect of that law is punitive, and the
result is that Plaintiff is obliged to endure cruel and unusual punishment beyond that of was is
sanctioned by the law for Plaintiff's criminal punishment, in violation of the *Ex Post Facto*
provision of the Constitution.   Plaintiffs have been additionally been forced to endure the
humiliation, anxiety, threats of violence, fear of theft, despair, loss of natural sleep, helplessness,
and severe anguish because of being separated and being restricted to moving into substantially
less desirable places as a result of being subject to the law, which is a direct and proximate result
of Defendants actions, inactions, and omissions.

102.    The conduct of Defendants caused Plaintiffs to suffer damages in an amount to be
proved at the trial of this matter.

103.    The conduct of Defendants was additionally despicable, and caused Plaintiffs to
suffer cruel and unjust hardship, was deliberate, oppressive, and malicious, so as to justify an
award of punitive damages.

**COUNT XII**
**LOSS OF CONSORTIUM**
**(against all Defendants)**

104.    Plaintiffs hereby incorporate by this reference, the entirety of the previous
paragraphs in this complaint as though the same were set forth herein in full.

105.    Plaintiffs, as a result of the injuries and damages sustained by Defendants, have
been caused to go without the aid, comfort, society, and services of their respective spouses, all
to their great loss, suffering, anguish, and financial detriment, both in the past and the future, in
an amount to be proved with particularly at the time of trial of this matter.

106.    Defendants conduct, actions, inactions, and omissions previously described were
done knowingly, willingly, oppressively, and maliciously, so as to justify an award of punitive
damages.

**COUNT XIII**
***BIVENS* ACTION VIOLATIONS**
**(against All Defendants)**

107.    Plaintiffs hereby incorporate by this reference, the entirety of the previous
paragraphs in this complaint as though the same were set forth herein in full.

108.    Discovery procedures should have made Plaintiff's criminal and habeas corpus cases "less a game of blind man's bluff, and more a fair contest with the basic issues and facts disclose to the fullest practicable extent." *Unites States v Procter & Gamble*, 356 U.S. 677, 682-83 (1958).    However, complete disclosure of the evidence in this case did not happen as a result of Defendants' concerted efforts to deprive Plaintiff of that evidence and to harm Plaintiff financially and emotionally, and to prevent exposure of the fact that the Government and its agents withheld exculpatory evidence, which resulted in one of its citizens being deprived of approximately four years of his liberty, in addition to other damages.

109.    As a direct and proximate result of defendants' actions, inactions, and omissions, Plaintiffs have suffered damages, including but not limited to significant past and future financial loss, extreme anguish, anxiety, tension, nervousness, nausea, sleeplessness, physical upset, emotional distress, embarrassment, and a loss of human dignity.  Plaintiffs are uncertain as to the full and precise nature of their damages, but are informed and believe and on that basis allege that their damages far exceed the jurisdictional minimum established for this court.    Plaintiffs will amend this complaint to state the precise nature and extent of those damages as soon as they are ascertained with particularity.

110.    Plaintiff's conduct has heretofore described was intentional, oppressive, malicious, and despicable conduct justifying an award of punitive damages.

111.    The allegations set forth above in paragraphs related to discovery abuses are in violation of, and/or are otherwise is actionable under, and/or fall under the provisions set forth in, *Bivens v  Six Unknown Named Federal Agents*, 403 US 388 (1971).


### COUNT XIV
### DECLARATORY RELIEF
### (against All Defendants)

112.    Plaintiffs hereby incorporate by this reference, the entirety of the previous paragraphs in this complaint as though the same were set forth herein in full.

113.    For all of the forgoing reasons, Plaintiff's request that this court declare the rights of the parties involved.

114.    In the event that Plaintiff's sentence is not corrected and the parties have not settled prior to the trial of this matter, whereby Plaintiff would continue to be subjected to the 2000 feet residency restrictions, Plaintiffs additionally request that this court determine and declare the constitutionality of the 2000 feet residency restriction under Proposition 83, as applied to Plaintiff, for the following reasons.

**1.  The 2000-Feet Residency Restriction is Invalid as It is an Unreasonable Condition of Supervised Release.**

115.    The 2000-feet residency restriction is invalid as applied to Plaintiff, since it is not related to Plaintiff's conviction, and the restriction requires conduct not related to criminality.

116.    Plaintiff has been given a modified condition of supervised release which directs Plaintiff to comply with section 3003.5, subdivision (b)'s restriction on residing within 2,000 feet of a park or school where children regularly gather.   In this regard, in the case of *In re Stevens* (2004) 119 Cal.App.4th 1228, 1234 the California Court of Appeals found:

> "Parole conditions, like conditions of probation, must be reasonable since parolees retain constitutional protection against arbitrary and oppressive official action."

(citation omitted);  Cal. Penal Code § 1203.1(j) (conditions of probation must be "reasonable").[2]

117.    A condition that "requires or forbids conduct which is not in itself criminal" is invalid when it: (1) has no relationship to the crime of which the offender was convicted, and (2) requires or forbids conduct which is not reasonably related to future criminality.  *People v. Dominguez*, (1967) 256 Cal.App.2d 623, 627-28; *People v. Bauer* (1989) 211 Cal.App.3d 937, 942 (citing *People v. Lent* (1975) 15 Cal.3d 481, 486);  *People v. Kiddoo* (1990) 225 Cal.App.3d 922, 926; *In re Bushman* (1970) 1 Cal.3d 767, 776-777.   The *Dominguez /Lent* analysis is used to evaluate the validity of conditions that have been imposed as a "matter of law."  *See e.g., In re Naito* (1986) 186 Cal.App.3d 1656, 1661 (applying Lent test to assess validity of an administrative regulation applied as a condition of probation).

---

[2]  Plaintiff offers primarily California law in support of his arguments against imposition of Proposition 83.  This is because where issues extend beyond purely federal questions, the law of the state in which the acts complained of occurred governs the substantive rights of the parties. *Lauf v. E.G. Shinner & Co.* (1938) 303 U.S. 323.

1    118.    Applying the *Domingues/Lent* test to Plaintiff, Plaintiff was convicted of crimes

2    involving aiding and abetting, transpiration, and possession of Internet child pornography – all of

3    which happened *inside* Plaintiff's home.   Where Plaintiff lived had nothing to do with the crime

4    to which Plaintiff was convicted.   There is inescapably no relationship between the 2000-feet

5    exclusion provision under the statute versus the crime to which Plaintiff was convicted.   Thus,

6    the first part of the *Dominguez/Lent* test has been met.

7    119.    Related to the second part of the *Dominguez/Lent* test, under the "2000-feet

8    provision" sex offenders are **not** prevented from going to parks or schools.  Under the "2000-feet

9    provision" sex offenders are **not** prevented from associating with anyone, including children.

10   And under the "2000-feet provision" sex offenders are **not** prevented from going to a school or

11   park and bringing anyone – including children -- back to the sex offender's residence.   Instead,

12   under the 2000-feet provision, sex offenders are only prevented from *residing* within 2000-feet

13   of a school or park.    It is inescapable that this 2000-feet provision effectively only affects where

14   a sex offender sleeps, and thus "forbids conduct which is not related to future criminality."

15   Both parts of the Dominguez/Lent tests have easily been met, and accordingly, this 2000-feet

16   residency provision of Proposition 83 is invalid.

17

18   **A.  The Residency Restriction Impinges On Plaintiff's Fundamental Interests In**

19   **Constitutionally Protected Rights, Including Residing In His Home And/Or Living With**

20   **His Family**.

21   120.    Plaintiff has a substantial liberty interest in residing in his home and/or with his

22   family.   The Supreme Court has repeatedly held that "Fourteenth Amendment liberty includes

23   'the right…to live and work where [one] will.'"   *Washington v. Glucksberg* (1997) 521 U.S.

24   702, 760 (Kennedy, J., concurring); *Moore v. East Cleveland* (1977) 431 U.S. 494.   In

25   *Cleveland Board of Education v. LaFleur* (1974) 414 U.S. 632, 639-640, the Court held that

26   "freedom of personal choice in matters of…family life is one of the liberties protected by the

27   Due Process Clause of the Fourteenth Amendment."   These interests are "fundamental."

28   *Griswold v. Connecticut* (1965) 381 U.S. 479 495;   *Moore v. City of East Cleveland* (1977) 431

1    U.S. 494, 499.  In *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), the Court held it is "[w]ithout

2    doubt" that among the liberty interests protected by the Fourteenth Amendment is the right "to…

3    establish a home."

4        121.    The California Constitution's guarantee of the inalienable right to privacy

5    likewise protects an individual's right to live in one's home, and with whom one chooses to live,

6    including one's family.  *See* Cal. Const. Art. I, § 1;  *White v. Davis* (1975) 13 Cal.3d 757, 774

7    ("The right of privacy…protects our homes, our families"); *Robbins v. Superior* Court (1985) 38

8    Cal.3d 199, 213 (in-kind benefit program infringed on right to privacy because it "compels the

9    individual to give up his home….[and] force[s him] to live in a particular location without the

10   freedom to choose his own living companions."); *City of Santa Barbara v. Adamson* (1980) 27

11   Cal.3d 123, 130 (Constitution protects "right of privacy not only in one's family but also in one's

12   home"); *Tom v. City and County of San Francisco* (2004) 120 Cal.App.4th 674, 680, 686

13   (recognizing "'autonomy privacy' interest in choosing the persons with whom a person will

14   reside" and that home is "a place that is traditionally protected most strongly by the

15   constitutional right of privacy.");  *Park Redlands Covenant Control Committee v. Simon* (1986)

16   181 Cal.App.3d 87, 97 (recognizing privacy rights to choose with whom one lives and to live as

17   a family); *cf. Schmidt v. Superior Court* (1989) 48 Cal.3d 370, 389-90 (rejecting privacy

18   challenge on grounds that policy, inter alia, does not "purport to compel the separation of parent

19   and child or to preclude the family from living together in an entire city or neighborhood[.]")

20   (citations omitted).

21       122.    Both the United States Supreme Court and California courts recognize an

22   individual's "substantial right" to retain property.  *See Mathews v. Eldridge* (1976) 424 U.S. 319,

23   322; *see also Greene v. Lindsey* (1982) 456 U.S. 444, 450-51 ("the right to continued residence

24   in [one's] home" is a "significant interest in property" protected by the Fourteenth Amendment);

25   *People v. Beach* (1983) 147 Cal.App.3d 612, 620 ("The right to acquire, own, enjoy and dispose

26   of property is also a basic fundamental right guaranteed by the Fourteenth Amendment to the

27   United States Constitution.").

28   / /

123.    This right applies to renters as well as to home-owners.  In *Greene v. Lindsey* (1982) 456 U.S. 444, the Supreme Court held that renters also had a due process right to adequate notice and a hearing before they could be evicted from their homes.  The Court held that "the right to continued residence in [one's] home" is a "significant interest in property" protected by the Fourteenth Amendment.  *Id.* at 450-451; cf. *Mathews v Eldridge* (1976) 424 U.S. 319, 322 (recognizing property interest in Social Security disability payments).  California similarly recognizes an individual's interest in their rented property as a "substantial" – even a "sacred" – right.  *Mendoza v. Small Claims Court of Los Angeles* (1958) 49 Cal.2d 668, 672 ("Nor can there be any doubt that possession by a tenant is a substantial right.  The right to retain property already in possession is as sacred as the right to recover it, when dispossessed."); *see also Arrieta v Mahon* (1982) 31 Cal.3d 381, 389 (same); Cal. Const. Art. 1, §§ 1 and 7.

124.    The California Court of Appeals has specifically rejected conditions placed on a probationer's residence that impinge on constitutional entitlements to travel and freedom of association, because rather than being "narrowly tailored to interfere as little as possible with these important rights, the restriction was extremely broad." *Bauer*, 211 Cal.App.3d at 944.

125.    Similarly, in *People v. Beach* (1983) 147 Cal.App.3d 612, 620, the Court of Appeals struck a condition of probation that it held amounted to banishment– that the probationer "relocate herself from the community where she has lived in her own home for 24 years."  The court found that the condition impinged on the probationer's right to intrastate travel, which, in turn, touched on other rights, holding:

> "The right to acquire, own, enjoy and dispose of property is also a basic fundamental right guaranteed by the Fourteenth Amendment to the United States Constitution.    Intrinsic and integral to this right is the basic ability to possess one's own property.    Could it be rationally argued that the enjoyment of the fruits of property ownership does not directly depend upon the owner's free and unimpaired access to, and possession of, said property?"

*Id.* at 622 (italics omitted); *cf. In Ex Parte Scarborough* (1946) 76 Cal.App.2d 648, 650 (striking a condition of probation that required the probationer to leave counties where he had been convicted and served his sentence since the "same principle which prohibits the banishment of a criminal from a state or from the United States applies with equal force to a county or city");

1 | *People v. Blakeman* (1959) 170 Cal.App.2d 596, 597 (condition of probation that provided for

2 | suspended sentence if probationer absented himself from county was struck down because it

3 | "was beyond the power of the court to impose banishment as a condition of probation".)

4 |     126.    Here, Plaintiff possesses "significant" and "fundamental" constitutionally

5 | protected liberty and property interests in continuing to reside in his home. Accordingly any

6 | condition of supervised release related to residency must be so carefully tailored that it is

7 | "reasonably related to the compelling state interest in reformation and rehabilitation." *In re*

8 | *White* (1974) 97 Cal.App.3d 141, 146; see also *People v. Pointer* (1984) 151 Cal.App.3d 1128,

9 | 1139 ("where a condition of probation impinges upon the exercise of a fundamental right and is

10 | challenged on constitutional grounds we must additionally determine whether the condition is

11 | impermissibly overbroad." Indeed, when viewed under the strict scrutiny lens, a condition of

12 | supervised release only passes muster if it is "narrowly drawn and specifically tailored to the

13 | individual probationer." *In re Babak* (1993) 18 Cal.App.4th 1077, 1084; *see also Stevens*, 119

14 | Cal.App.4th at 1237 (striking total internet ban as a condition on sex offender's parole because

15 | "it is not enough to show that the Government's ends are compelling; the means must be

16 | carefully tailored to achieve those ends."); *see generally also U.S. v Genentera*, 379 F3d 596,

17 | 601 (9th Cir. 2004)("Special Conditions [of supervised release] may **_only_** be imposed 'to the

18 | extent such condition—[i]nvolves no greater deprivation than necessary for the purposes [of

19 | protecting the public and deterring criminal conduct]'").

20 |     127.    Since residency restrictions requiring sex offenders to abandon their homes

21 | impinge on constitutionally protected rights, such restrictions must also meet the heightened

22 | requirement that they not be overbroad and reasonably related to the state interest in reformation

23 | and rehabilitation. *Meyer v.Nebraska* (1923) 262 U.S. 390, 399; *In re White* (1979) 97

24 | Cal.App.3d 141, 146.

25 | **B. The Residency Restriction Is Overbroad.**

26 |     128.    "Particularized conditions of probation should be directed toward rehabilitation

27 | rather than reliance upon some general condition which utilizes a mechanized mass treatment

28 | approach." *In re White*, 97 Cal.App.3d at 151.

1    129.    In the instant case before this Court, Plaintiff is being required to leave his home

2  for the simple reason that he lives within 2,000 feet of a school or a park.   In contrast, other

3  states that have enacted sex offender residency restrictions have adopted narrow provisions that

4  restrict application of the residency restriction to a narrowly tailored population of potential

5  recidivists considered "high risk."  *See e.g.,* Ark. Code Ann. § 5-14-128(a)(applying residency

6  restrictions only to "level 3" and "level 4" offenders).

7    130.    The 2,000-feet restriction is so unreasonably broad, it makes off limits virtually

8  every residential neighborhood in San Diego.   Indeed, the SPPCA is significantly broader and

9  more punitive than any other sex offender residency restriction in the country:

10    • The 2,000-feet residency restrictions zones applicable to Plaintiff are among the largest

11        in the country.  *Cf.* Ga. Code Ann. § 42-1-15 (creating 1,000-feet residency

12        restriction zones); 720 Ill. Comp. Stat. § 5/11-9.3 (b-5) (500-feet residency zones).

13    • The SPPCA applies to every person required to register as a sex offender in California,

14        regardless of the type of previous conviction, assessment of dangerousness, or risk of

15        re-offending.  *Cf.* Ark. Code Ann. § 5-14-128(a) (applying residency restrictions only

16        to level 3 and 4 sex offenders); Fla. Stat. Ann. § 947.1405(7)(a)(2) (restricting

17        residency around schools and parks only if victim was a minor); Ind. Code § 35-38-2-

18        2.2 (providing judges discretion to lift residency restrictions); Iowa Code §

19        692A.2A(1) (restricting residence only where victim was a minor]; Ky. Rev. Stat. §

20        17.545(5) (limiting residency restrictions only to adult offenders).

21    • The SPPCA residency restriction applies for life. (Cf. Tex. Crim. Proc. Code Ann. §

22        42:12, Sec. 13B(a) (imposing residency restriction only during probation and

23        supervised release); Ga. Code Ann. §§ 42-1-15, 42-1-12 (g)(2)(B) (relieving certain

24        residency restrictions after 10 years).

25    • The SPPCA does not contain a grandfather clause to protect the rights of those

26        registrants who already own or rent their homes in restricted areas. (*Cf.* Iowa Code §

27        692A.2A(4)(d) (providing that new sex offender residency restrictions shall not apply

28        to residences established when the statute went into effect).

131.    Since the SPPCA's residency restriction is so overtly overly broad and not at all conducive to assisting the government in rehabilitation and preventing recidivism, it is an understatement to say that this residency restriction is a far cry from the requirement that it be a "focused restriction." *In re Stevens*, 119 Cal.App.4th at 1239.   The 2000 feet residency restriction is manifestly overbroad, and should be declared unconstitutional.

**C. The Residency Restriction is Not Reasonably Related to, and Actually Undermines, Any Compelling State Interest in Reformation and Rehabilitation.**

132.    The residency restriction does nothing to assist the government in its effort to prevent recidivism and to rehabilitate offenders.   *The restriction does not prevent offenders from going into the restricted areas, merely from residing in them.*   For example, a sex offender is not in any way prevented, under the present law, from going to a playground and spending his entire waking hours playing in a sand box with little children who are unknown to him.    The only thing that the law prevents, is that the sex offender cannot *reside* within 2000-feet of a park or school.   Indeed, a sex offender under this riduclous law can actually spend all day and sleep all night in a park, provided that the park is not his "residence."

133.    To enforce this nonsensical law, and force sex offenders to leave their homes actually undermines public safety by driving sex offender registrants underground and separating others from existing family, employment, support, and rehabilitation networks.   Studies of sex offender residency restrictions enacted in other states demonstrate that residency laws which effectively ban ex-felons from living in (but not frequenting) certain areas where children congregate have *no correlation* to reduced incidents of sexual assault and actually increase the likelihood of recidivism among those offenders banished from their communities.   *See*, e.g., No Easy Answers, Sex offenders in the U.S. Human Rights Watch (Sept. 2007) available at www.hrw.org/reports/2007/us0907/9.htm.   Efforts to rehabilitate offenders and to minimize the rate of re-offending are much more successful when offenders are employed, have family and community connections, and have a stable residence.   Additionally, since sex offenders are prevented from residing in virtually all of San Diego, this places high concentrations of sex

1    offenders in small areas of San Diego, where they will be more likely to interact and find

2    inappropriate support, leading to more crime.  Furthermore, homelessness and residential

3    instability only worsens recidivism and rehabilitation efforts.   Where offenders are forced into

4    unstable situations or forced to become homeless, they face additional hurdles in avoiding

5    recidivism.  Sleeping in public places, for instance, may result in a misdemeanor offense.  *See*

6    Cal. Penal Code § 647 subd. (j) ("Every person who commits any of the following acts is guilty

7    of disorderly conduct, a misdemeanor:…Who lodges in any building, structure, vehicle, or place,

8    whether public or private, without the permission of the owner or person entitled to the

9    possession or in control of it.").

10        134.    As noted in Jodi Schwartzberg & Annie Lo's "The Law and Policy of Sex

11   Offender Residency Restrictions: An Analysis of Proposition 83" (Public Law Research

12   Institute, Fall 2006) at 1-2, available at www.uchastings.edu/?pid=4490:

> "Compared to residency restrictions adopted in other states,
> California's proposed residency restriction is notable particularly
> for its breadth…The Propositions' 2,000 feet ban is significantly
> more restrictive than many other states' bans.  Particularly if the
> terms "school" and "park" – which are nowhere defined in the
> statute – are given a broad construction, the ban could effectively
> exclude offenders from entire cities and counties in California.
>
> Forced to move away from friends and family, sexual offenders
> become disconnected from important financial and emotional
> support systems.   The situation simultaneously creates a
> detrimental support system by pushing sexual offenders into de
> facto sexual offender communities without rehabilitative resources,
> producing a group identity that makes recidivism more likely even
> for those less prone to re-offend.   Banishing sexual offenders from
> metropolitan areas or even entire states will not solve the problem
> – it merely pushes it onto other cities and states."

22        135.    In sum, well-established tenets of correctional policies, along with the goals of

23   rehabilitation and preventing re-offense are severely impaired by the residency restriction.

24   / /

25   / /

26   / /

27   / /

28   / /

**D.  Even If The 2000-Feet Restriction Was Not Subject To Strict Scrutiny Review, The Restriction Is Invalid Because The Restriction Is Not Reasonably Related To The Offense and There is No Reasonable Connection Between the Condition and Prevention of Future Criminal Acts.**

136.    Even if the 2000-feet restriction did not impinge upon a constitutional right, which it clearly does, the residency restriction is invalid as an unreasonable condition under the Dominguez/Lent test.  *Dominguez*, 256 Cal.App.2d at 627; Lent, 15 Cal.3d at 486; *Bauer*, 211 Cal.App.3d at 942; *In re Stevens*, 119 Cal.App.4th at 1234 (probation law interpreted the same as parole law).   As set forth above, there is a marked absence of any connection between this "2000-feet" condition of Plaintiff's supervised release and his underlying offense of conviction. The Plaintiff's crime was committed inside his home.   The requisite connection between the residency restriction and the prevention of future criminal acts by Plaintiff is also absent. *Dominguez*, 256 Cal.App.2d at 628;   *Lent*, 15 Cal.3d at 486.

137.    California courts have repeatedly struck down probation conditions that were not related to the underlying crimes.   In *People v. Kiddoo* (1990) 225 Cal.App.3d 922, the defendant was convicted of possession of methamphetamine but was not allowed possess or consume alcohol or to frequent places in which alcohol was sold as a condition of his probation. Such a condition was invalid because of the lack of connection between alcohol consumption and methamphetamine possession. *Id.* at 928.   Similarly, in *People v. Burden*, 205 Cal.App.3d 1277 (1988) a condition of probation that prohibited defendant from being employed as a salesperson was not valid where the condition had no relationship to his crime (drawing checks on insufficient funds [*Id.* at 1279-1280]).   Indeed, the Ninth Circuit Court of Appeals has struck down probation conditions when the conditions *were* related to the crime. *See U.S. v Rearden*, 349. F.3d 608, 615 (9th Cir. 2003)(total Internet ban on defendant who used Internet to both "hunt" children and plan to kidnap and rape known children disallowed).    Thus, sex offender residency requirements cannot lawfully apply to federal probationers whose sex offenses did not involve going to parks or schools or to make contact with victims (and again, it is significant that the law does not in any way prevent any sex offender from frequenting parks or schools).

138.    Even if there is a connection between the supervised release condition and the underlying crime, there is no reasonable connection between the condition and the prevention of future criminal acts.    Here, as discussed above, the restriction not only does not prevent future criminality, it arguably *causes* future criminality.

139.    Where, as here, a condition contributes ***nothing*** to public safety, and in fact the condition exacerbates circumstances that may result in future crimes, various courts have found such conditions invalid. *See e.g., Beach*, 147 Cal.App.3d at 620-623; *Burden*, 205 Cal.App.3d at 1280-1281; *People v. Fritchey* (1992) 2 Cal.App.4th 829, 837-838.   Thus in *People v. Beach*, a probation condition that required a woman to relocate to a different community was unreasonably broad because keeping appellant out of her home and neighborhood would not necessarily prevent future criminal conduct.  *Beach*, 147 Cal.App.3d at 620-623.   The court emphasized that the condition might have the opposite effect in that "taking appellant away from her established home, the companionship of her neighbors, and the familiarity of her surroundings would not contribute to inner feelings of physical security... and may very well heighten her feelings of insecurity." *Id.* at 621; see also *Burden*, 205 Cal.App.3d at 1280-1281 (condition that defendant not work as a salesperson was invalid where it was not reasonably related to future criminality since he "could have worked at any job and perpetrated the same kind of fraud" that he was convicted).

140.    The probation condition at issue in *People v. Fritchey* (1992) 2 Cal.App.4th 829, 837-838 – that defendant forfeit his truck because it had contained burglary tools and was used in the defendant's crime – also failed the test of reasonableness under *Lent* because the defendant's lawful ownership of a truck was conduct which is not itself criminal and was not reasonably related to future criminality. *Id.* at 837-838.   In so holding, the *Fritchey* court stated that a "reasonable condition of probation is not only fit and appropriate to the end in view but it must be a reasonable means to that end. Reasonable means are moderate, not excessive, not extreme, not demanding too much, well balanced." *Id.*

141.    Requiring Plaintiff to leave his home, be separated from his wife, and reside in substandard living conditions (or be forced into homelessness or reincarceration) and causing

1   Plaintiff to live in small areas with high concentrations of sex offenders, does not prevent future

2   criminality.   Rather, the residency restriction undermines public safety.   The severity of the

3   restriction is also entirely out of proportion to any possible speculative benefits.   As such, the

4   condition is unreasonable and must be stricken.

5

6       **2.  The Residency Restrictions of Proposition 83 are Impermissibly Vague and**

7   **Violate Plaintiff's Fundamental Right to Due Process**

8           142.    Section 3003.5, subdivision (b) is unconstitutionally vague because it does not

9   define the terms in the statute that would tell Plaintiff where he is permitted to live.   When a

10  penal statute does not provide an individual with sufficient notice of permissible conduct, it will

11  be found void for vagueness.  *See Kolender v. Lawson* (1983) 461 U.S. 352, 357; see also

12  *Lanzetta v. State of New Jersey* (1939) 306 U.S. 451, 453 ("No one may be required at peril of

13  life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be

14  informed as to what the State commands or forbids").   The statute must also be definite so as to

15  provide explicit standards for those who apply it in a manner that does not encourage arbitrary

16  and discriminatory enforcement.  *See Kolender*, 461 U.S. at 357.

17          143.    Under section 3003.5, subdivision (b) "it is unlawful for any person for whom

18  registration is required pursuant to Section 290 to reside within 2,000 feet of any public or

19  private school, or park where children regularly gather."  This is the extent of the housing

20  restrictions contained in the statute.   The statute contains no definition whatsoever of what

21  constitutes a "school" or "park" for the purposes of the statute, or how the 2,000 feet between a

22  sex offender's residence and an offending school and/or park is to be measured, or, most

23  problematic, what constitutes "where children regularly gather."   Such vagueness and lack of

24  definition violates a Plaintiff's right to due process, as Plaintiff has no fair warning as to where

25  they may legally reside.  *See Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 ("Vague

26  laws may trap the innocent by not providing fair warning").

27          144.    The vagueness of the statute with respect to what constitutes a "park where

28  children gather," is encouraging arbitrary enforcement by law enforcement personnel throughout

1    the State. *See Kolender*, 461 U.S. at 358.    Each individual United States Probation Office has

2    almost complete discretion to determine whether or not a federal probationer is in compliance

3    with the housing restrictions, based on an independent assessment of what constitutes "a park

4    where children regularly gather."    For example, some probation officers might determine that

5    beaches and commercial ballparks are "parks where children regularly gather," while in other

6    counties probation officers might declare all open space with dirt and shrubs or a nature reserve

7    with bobcats and coyotes parks off limits, regardless of whether children are known to regularly

8    gather at such locations.

9        145.    It has already come to pass that that Plaintiff and his probation officer have had

10    numerous arguments over Petco Park, including intense debates over the following questions:

11    Is Petco Park a "park" under the statute, or is it the Park in the Park, which is a small playground

12    within Petco Park, the "park" which is contemplated under the statute?   And then, where is the

13    2000 feet measuring to begin, at the border of the Park at the Park, at the border of Petco Park, or

14    the border of the streets that surround Petco Park?[3]

15        146.    In addition, the United States Probation office in San Diego has chosen to define

16    the 2,000 feet distance term of the statute to mean 2,000 feet "as the crow flies."   Some

17    individuals are thus being forced from their homes even though the school or park at issue is

18    located on the other side of a freeway, with no means of access along a path anyway near as

19    short as 2,000 feet. Plaintiff is being prevented from living in those areas.

20    / /

21    / /

22    / /

23    / /

24

25    [3] In downtown San Diego, where just a few feet exclude places for Plaintiff to live, Plaintiff argued with his
      probation officer that even accepting the United States Probation Department's position that the entirety of Petco

26    Park is a "park," then the corner of J Street & 7th (which is normally shown on maps as being a part of Petco Park,
      but in fact is owned by private development and has condominiums on that parcel), should not be considered the

27    boundary of Petco Park to begin the 2000 feet measurement.   When Plaintiff brought to his probation officer a copy
      of the plat map showing that the corner of J & 7th is not at all part of Petco Park but rather private development,

28    Plaintiff's probation officer dismissed Plaintiff's solid proof, stating that the United States Probation Office
      (unilaterally) already determined that Petco Park should be measured from J & 7th.

1      147.    The impermissibly vague nature of the statute allows this sort of arbitrary and

2   capricious enforcement with no consideration for the interests intended to be served.

3   Probationer's themselves, including Plaintiff, are unable to come into compliance with the

4   housing restrictions because of the vagueness of the statutory language coupled with the arbitrary

5   enforcement of its restrictions.   Probationer's, including Plaintiff, attempting to find housing

6   cannot rely on maps to locate compliant housing if there are no consistent or explicit instructions

7   as to what constitutes a "park where children gather."

8      148.    Worse, the maps, which are found at www.maps.yahoo.com, that the United

9   States Probation Department uses to unilaterally determine compliance are not reliable.   For

10   example, on one occasion, Plaintiff went out to an area to find suitable housing with a map from

11   www.maps.yahoo.com in hand.   When he called his probation officer, she brought up on her

12   computer, the same area on www.maps.yahoo.com, and found schools which were not reflected

13   on Plaintiff's map.   Indeed, the maps which the United States Probation Department uses to

14   enforce the 2000-feet provision are so unreliable that Plaintiff's prior residence was pre-

15   approved by his probation officer as being in compliance with the 2000 feet provision prior to

16   Plaintiff moving into the residence, yet despite the approval based on the Yahoo maps, Plaintiff

17   was nonetheless again required (under the threat of non-compliance and incarceration) to move

18   because the location was in fact not in compliance with the statute due to schools which were not

19   shown on a prior Yahoo map.   Thus, Plaintiff cannot be assured even by the Probation

20   Department that he is compliance with the law.

21      149.    This housing restriction should be declared unconstitutionally vague, as it does

22   not describe, with sufficient clarity, what Plaintiff must do in order to be in compliance with the

23   statute, *See Kolender*, 461 U.S. at 361, and there is no standard basis on which Plaintiff can rely.

24   / /

25   / /

26   / /

27   / /

28   / /

1    **3.  Proposition 83's Residency Restriction Violates Section 3 of the California Penal**

2    **Code which Prohibits Retroactivity of Penal Statutes.**

3    150.    The 2,000-feet restriction as applied to section 290 registrants who committed

4    underlying sex offense prior to November 8, 2006 violates Penal Code section 3, which states,

5    "[n]o part of [the Penal Code] is retroactive, unless expressly so declared."  Absent an express

6    declaration, a statute may apply retroactively only if "there is 'a clear and compelling

7    implication'" that the legislature or the voters intended such a result.  *In re Chavez* (2004) 114

8    Cal.App.4th 989, 993.

9    151.    A law is considered to be retroactive if "it attaches new legal consequences to, or

10    increases a party's liability for . . . conduct that was completed before the law's effective date."

11    *People v. Grant* (1999) 20 Cal.4th 150,157.   A law is retroactive if "[the last] event necessary to

12    trigger application of the statute occurred before . . . the statute's effective date." (Ibid.)   In this

13    instance, section 3003.5, subdivision (b) states that the housing restrictions apply to "any person

14    for whom registration is required pursuant to Section 290." The last event necessary to trigger

15    application of the housing restrictions is registrant's underlying sex offense.   The Government,

16    however, has chosen to defy section 3's rule of non-retroactivity and enforce the 2,000-feet limit

17    against Plaintiff, whose section 290 offenses occurred prior to November 8, 2006.   This is an

18    impermissible retroactive application of a statute that is silent as to retroactivity. *See Tapia v.*

19    *Superior Court* (1991) 53 Cal.3d 282, 298 ("application of [the statute] to crimes committed

20    before the measure's effective date would be 'retrospective' because [it] would change the legal

21    consequences of the defendant's past conduct").

22

23    **4.  Proposition 83's Residency Restriction Violates the Ex Post Facto Clause as**

24    **applied to Plaintiff, and to Persons Who Comitted Sex Offenses Before the November 8,**

25    **2006, Effective Date.**

26    152.    The 2,000-feet restriction violates the *Ex Post Facto* Clause of the United States

27    Constitution as applied to persons, like Plaintiff, whose sex offenses were committed

28    before the passage of the law on November 7, 2006.   The United States Supreme Court has

1    defined three distinct types of *ex post facto* violations: (1) "'any statute which punishes as

2    a crime an act previously committed, which was innocent when done;'" (2) any statute

3    "'which makes more burdensome the punishment for a crime, after its commission;'" and

4    (3) any statute "'which deprives one charged with crime of any defense available according to

5    law at the time when the act was committed.'" *Collins v. Youngblood* (1990) 497 U.S. 37, 42

6    (quoting *Beazell v. Ohio* (1925) 269 U.S. 167, 169-170).

7         153.    The 2,000-feet restriction, as applied to persons who committed sex offenses

8    before November 8, 2006, falls into the second category of *ex post facto* violations, in that it

9    "makes more burdensome the punishment for a crime, after its commission."   A law violates

10    this aspect of the *Ex Post Facto* Clause if it operates retroactively by punishing conduct

11    completed before its enactment and adds to the penalty already imposed. *See Weaver v. Graham*

12    (1981) 450 U.S. 24, 29-30; *see also Johnson v. United States* (2000) 529 U.S. 694, 699.

13         154.    The SPPCA's 2,000-feet restriction is sufficiently punitive to trigger the *Ex Post*

14    *Facto* Clause. In assessing whether a statute is punitive, the court must determine whether the

15    purpose of the statute was to establish a non-punitive, regulatory scheme or to impose

16    punishment. *See Smith v. Doe* (2002) 538 U.S. 84, 92.   If the statute was enacted to impose

17    punishment, then it is a facial violation of the *Ex Post Facto* Clause. (*Ibid.*)   If, however, the

18    statute was intended to be regulatory, an individual must demonstrate that the scheme is "so

19    punitive either in purpose or effect as to negate [the State's] intention to deem it civil" to

20    establish a Constitutional violation. (*Ibid.*)    Here, both tests are met, in that the SPPCA's intent

21    and effect are punitive.

22

23        **A. The *Purpose* of the 2,000-feet Restriction Is Punishment.**

24         155.    In determining whether a statute is punitive in nature, the court must assess the

25    legislature's intent by considering the statutory language and structure. (See Smith v. Doe,

26    538 U.S. at 92.) Under California law, the intent of the voters in a voter-passed initiative

27    is paramount, and can be determined from the ordinary language of the statute. (*See Davis*

28    *v. City of Berkeley* (1990) 51 Cal.3d 227, 234.).

1    156.    The SPPCA's short title is the "The Sexual Predator **_Punishment_** and Control

2    Act: Jessica's Law." (Prop. 83, section I [emphasis added], available at

3    www.sos.ca.gov/elections/vig_06/general_06/pdf/proposition_83/entire_prop_83.pdf).    The

4    initial findings and declarations state that California places a "high priority on maintaining

5    public safety through laws that deter **_and punish_** criminal behavior." *Id.* at section 2(a).

6    In order to meet such public safety goals, the statute provides that "adequate **_penalties_**

7    must be enacted to ensure predators cannot escape prosecution." *Id.* at section 2(d).    Clearly, the

8    intent of the law was to punish.

9

10    **B. The *Effect* of the 2,000-feet Restriction Is Punitive..**

11    157.    The Supreme Court in *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144

12    articulated non-dispositive factors to be considered when determining whether the law's effects

13    are punitive. The factors include, but are not limited to: whether the law has traditionally been

14    regarded as a punishment, whether the law has a rational connection to a non-punitive purpose,

15    and whether the law is excessive in relation to that other assigned purpose. (*Ibid.*)

16    158.    In many counties, there is nowhere for section 290 registrants to live that meets

17    the 2,000-feet limit.    These restrictions can also be limitlessly expanded under the statute, as

18    section 3003.5, subdivision (c) allows for municipal jurisdictions to enact local ordinances

19    imposing further residency restrictions on section 290 registrants.    Indeed, Plaintiff was told by

20    his probation officer that he cannot reside anywhere where children are regularly present, such as

21    apartment buildings which house children.

22    159.    The 2,000-feet restriction is excessive in relation to its stated purpose, and has no

23    rational connection to that purpose.    *See Kennedy v. Mendoza*, 372 U.S. at 168-169.    The

24    stated purpose of 2,000-feet restriction is to increase child safety. *See* Prop. 83, section 29(c).

25    The imposition of the 2,000-feet restriction against all section 290 registrants, including those

26    whose offense did involve children, is excessive and has no rational connection to the purpose of

27    increasing child safety.    Indeed, such restrictions degrade public safety as section 290

28    registrants who cannot find housing are either driven underground, are forced to become

1   transient (increasing the difficulty of adequate supervision by probation and law enforcement),

2   and/or separated from friends, family, employment and other support networks.  The residency

3   restriction is also excessive in relation to its intended purpose of protecting children because the

4   residency restriction does not in any way prevent sex offender from going to any park or school

5   where children regularly gather, or prevent in any way sex offenders from brining children from

6   those parks and schools into their homes.  It only prevents, without any legitimate purpose, sex

7   offenders from residing within 2000-feet of parks and schools.

8

9        **C. Enforcement Through A Supervised Release Condition Does Not Cure The _Ex_**

10   **_Post Facto_ Violation.**

11        160.    New laws that make the punishment for a prior crime more burdensome violate

12   the _Ex Post Facto_ Clause regardless of whether the punishment is enforced in connection with

13   parole conditions. _See United States v. Jackson_ (9th Cir. 1999) 189 F.3d 820, 824 (parole

14   condition arising from change in law after commission of underlying offense violates _Ex_

15   _Post Facto Clause_ if the condition is punitive).

16        161.    In _People v. Callejas_ (2000) 85 Cal.App.4th 667, the court of appeals determined

17   that the  _Ex Post Facto Clause_ barred the imposition of a parole revocation fine where the

18   underlying offense was committed prior to the enactment of the statute.  In _Callejas_, the Plaintiff

19   committed a drunk driving offense in 1993, and was sentenced to probation.  _Id._ at 669.

20   In 1995, the legislature added a "parole revocation fine" to the Penal Code. _Ibid._  In 1999,

21   Callejas was re-sentenced for the 1993 drunk driving offense and the Superior Court

22   imposed the new parole revocation fine as part of the sentence. _Ibid._    The Court of

23   Appeals held that new parole revocation fine increased penalties in a manner that differed

24   from the conditions in place at the time of Callejas' underlying offense, not future

25   violations of parole. _Id._ at 677-678.

26        162.    _Callejas_ followed the rule of _Johnson v. United States_ (2000) 529 U.S. 695, in

27   holding that for _ex post facto_ purposes, a parole revocation penalty relates back to the original

28   offense, and not to a future parole violation.   _Johnson_ concerned the imposition of an additional

1   supervised release term after violation of parole.  *See id.* at 700-701.  Holding that post-

2   revocation penalties must be attributed to the original conviction, the Court determined that the

3   imposition of an additional supervised release term would alter the conditions upon which the

4   Plaintiff was originally sentenced and be a retrospective application of the statute barred by the

5   *Ex Post Facto* Clause.  *Id.* at 701.

6          163.    Both *Johnson* and *Callejas* establish that the application of the SPPCA to

7   individuals who committed section 290 offenses prior to the statute's passage on November 7,

8   2006, would be retrospective, regardless of whether such parolees were released from custody

9   after the statute's effective date, as the new housing restrictions fundamentally alter the parole

10  scheme under which they were sentenced.   Because the SPPCA's 2,000-feet restriction is

11  punitive in intent and effect, such retrospective application violates the *Ex Post Facto* Clause.

12  Since Plaintiff was convicted in 1999, and should have been released in 2003 but for the

13  Government's illegal withholding of evidence, enforcement of the 2000-feet residency restriction

14  as applied to Plaintiff doubly violates the *Ex Post Facto* clause.

15         164.    For all of the foregoing reasons, in the event that Plaintiff has not reached a global

16  settlement with the Defendants and is otherwise still subject to enforcement of the 2000-feet

17  residency restriction under Proposition 83 following the trial of this matter, Plaintiffs ask that

18  this court declare that 2000-feet residency restriction under Proposition 83 is unconstitutional as

19  applied to Plaintiff.

20
                                    **COUNT XIV**
21                **TEMPORARY RESTRAINING ORDER AND INJUNCTION**
                                **(against All Defendants)**
22
           165.    Plaintiffs hereby incorporate by this reference, the entirety of the previous
23
    paragraphs in this complaint as though the same were set forth herein in full.
24
           166.    Absent a clear command to the contrary from Congress, federal courts retain the
25
    equitable power to issue injunctions in suits over which they have jurisdiction.  *Califano v.*
26
    *Yamasaki* (1979) 442 U.S. 682, on remand, 607 F.2d 329 (9th Cir. 1979).   Thus, irrespective of
27
    any statutory grant of authority, a federal court may, in the exercise of its inherent equitable
28
    powers, enjoin actionable conduct. *Marsellis-Warner Corporation v Rabens* (1999) 51 F. Supp.

1  2d 508.  As to congressionally created injunctive remedies, unless the statute in so many words,

2  or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full

3  scope of that jurisdiction is to be recognized and applied.  *Imprisoned Citizens Union v. Shapp*

4  (1998) 11 F. Supp. 2d 586.

5        167.    Except when purely federal questions are involved, the law of the state in which

6  the acts complained of occurred governs the substantive rights of the parties.  *Lauf v. E.G.*

7  *Shinner & Co.* (1938) 303 U.S. 323.    However, although the right upon which a cause of action

8  is based is state-created, the Federal Rules of Civil Procedure, specifically Federal Rule of Civil

9  Procedure 65, contemplates a federal standard as governing requests addressed to the federal

10 courts for preliminary injunctions.  *Continental Group, Inc. v Amoco Chemicals Corp.* (1980)

11 614 F.2d 351.

12       168.    "A [TRO] is designed to preserve the status quo until there is an opportunity to

13 hold a hearing on the application for a preliminary injunction."  *Bronco Wine Co. v. U.S. Dept.*

14 *of Treasury,* 997 F.Supp. 1309, 1313 (E.D.Cal.1996) (A TRO is designed "to preserve the status

15 quo pending a full hearing on a preliminary injunction.");  *Black's Law Dictionary* 1181 (5th

16 ed.1979) (stating that a restraining order forbids "the defendant to do the threatened act until a

17 hearing on the [injunction] application can be had, ... and it does no more than restrain the

18 proceeding until such determination").

19

20  **1.  The California Supreme Court Has Stayed Enforcement Of The 2000-feet**

21  **Residency Restrictions, and this Court Should Also Do So For The Same Sound Reasons**

22       169.    On October 10, 2007, the California Supreme Court in a number of cases stayed

23 enforcement of the residency provision of Proposition 83, as codified under California Penal

24 Code Section 3003.5(b), pending existing challenges to the statute.  *In re E.J.,* No. S156933; *In*

25 *re S.P.,* No. S157631; *In re J.S.,* No. S157633 and *In re K.T.,* No S157634.  *See* docket, *In re*

26 *E.J,* No. S156933 at www.courtinfo.ca.gov.  Although the California Supreme Court on

27 October 15, 2007 denied a request to extend the stay to all persons required to register under

28 section 290, the Court did so without prejudice to the filing of actions for declaratory and

1   injunctive relief by other individuals affected by section 3003.5, subdivision (b). *Ibid.*    The

2   California Supreme Court thereafter stayed the enforcement of section 3003.5 to a number of

3   other individually petitioning individuals.    The reasoning for the various California Supreme

4   Court's stays are sound, and this Court should likewise stay enforcement pending resolution of

5   the existing challenges to the constitutionally flawed residency restriction under the law, and

6   otherwise stay enforcement of the law pending resolution of the severe deprivation of

7   constitutional rights in this case.

8

9       **2.  Emergency Temporary Relief is Required to Prevent Irreparable Injury.**

10      170.    Plaintiff faces immediate, irreparable, and ongoing injury – including the

11  possibility of incarceration  – because of (1) the Government's ongoing illegal withholding of

12  evidence; and (2) the Government's recent election to enforce the over one-year old 2000-feet

13  statute.

14      171.    Related to the 2,000-feet restriction, the statute is so expansive that Plaintiff is

15  barred from living in nearly every residential neighborhood in San Diego, and is being forced to

16  be separated from his wife.    For these reasons, and because of Plaintiff's present poverty, it is

17  impossible for Plaintiff to comply with the law as interpreted by the United States Probation

18  Department, and be able to meet his wife's residency needs.    Plaintiff's only choices are to stay

19  separated from his wife, or be in non-compliance with the law and return to jail.

20      172.    For the foregoing reasons, if the 2000-feet residency restrictions are enforced

21  prior to the correction of Plaintiff's sentence, and/or prior to resolution of the pending challenges

22  to the law, Plaintiff will be irreparably harmed.

23

24      **3.  The Balance of Harms Favors an Injunction Because a Stay will Not Endanger**

25  **Public Safety.**

26      173.    While the harm to Plaintiff by enforcing the 2000-feet provision under

27  Proposition 83 is certain, the benefit to the Government, and the public, is highly speculative at

28  best.  There is absolutely no evidence that this residency restriction will prevent any future

1  crime, particularly for Plaintiff.    Indeed, Plaintiff's crimes were all committed inside of

2  Plaintiff's home.

3      174.    Plaintiff would like to point out what most people (including the voters) seem to

4  miss about this senseless law:  The 2000 foot-residency restriction does not prevent sex offenders

5  from going to schools or parks, it only restricts them from *residing* within 2000 feet of a school

6  or park.    In other words, under the "2000-feet statute," any sex offender could go to a park and

7  spend all day and all night playing in a sand box with small children unknown to that sex

8  offender; and under the 2000 feet statute, a sex offender could go to any school or park and bring

9  children home to his residence – a sex offender only cannot reside within 2000 feet of a park or

10 school.  Stated succinctly:  This 2000-feet residency restriction under Proposition 83 not only

11 does not make one iota of sense, it also unquestionably protects no one.

12     175.    The absence of a clear threat to public safety if Plaintiff is allowed to reside

13 within 2000 feet of a school or park is illustrated best by the fact that the United States Probation

14 Department waited more than one year after passage of Proposition 83 before making any efforts

15 to enforce the residency restriction as a condition of supervised release against any federal

16 probationer, and the fact that the San Diego Police Department is not even enforcing the

17 residency provision at all.    In fact, the San Francisco Police Department has advised the entirety

18 of the sex offenders living in the San Francisco area to register as "transient" to get around the

19 nonsensical 2000-feet restriction altogether.  *See* CBS Newscast http://cbs5.com/video/?id=

20 27743@kpix.dayport.com.    Accordingly, delay of a few more months to resolve the serious

21 legal issues presented by this motion will do no harm.

22     176.    Related to the exculpatory evidence which the Government is presently illegally

23 withholding, any person who has completed a high school civics class understands that the

24 Constitution guarantees the right to present evidence and witnesses favorable to the accused.

25 The Government has deprived Plaintiff of that right, which resulted in Plaintiff's sentence being

26 increased 46 months under the Sentencing Guidelines.    Regardless of any previous order of this

27 Court, since Plaintiff is still on habeas review, the Government is still obligated to allow

28 complete discovery of its files.  The law is clear.  The Government is required to allow complete

1  disclosure of its files, even in the absence of a court order.  Unfortunately, the Government has

2  refused to do this, and Plaintiff had no choice but file the instant civil rights action to compel the

3  Government to produce that evidence so that he may obtain the evidence to get his sentence

4  corrected, and to otherwise seek redress for his damages.

5       177.    Concerning the 2000-feet residency restriction under Proposition 83, for all of the

6  foregoing reasons, Plaintiff is unfairly and against the constitutions of California and the United

7  States, being subjected to the 2000-feet residency restriction.    That residency restriction is

8  unconstitutional, and this Court should formally declare it so.  Until such time as that happens,

9  or until such time that the California Supreme Court rules on the issue, the California Supreme

10  Courts' decisions to stay enforcement of Proposition 83 as codified in California Penal Code

11  Section 3003.5(b), while challenges to the law are pending were sound, and should be followed

12  by this Court in this case.

13

14                              **VI.  CONCLUSION**

15       178.    Defendants, acting under the color of law, unlawfully withheld evidence in

16  Plaintiff's criminal and habeas actions, and in doing so, deprived Plaintiff of approximately fourt

17  years of his liberty without due process of law and in violation United States Constitution.

18  Because the conduct of individually named Defendants was deliberate, coordinated, oppressive,

19  repeated, illegal, tortious, and ongoing over the course of many years, and done and with utter

20  disregard to not only their legal and ethical obligations, but their duties as officers of the court,

21  the individually named Defendants should not be allowed to escape liability under the shield of

22  immunity.

23       179.    The inescapable fact is that Defendants are still obligated under the clear Ninth

24  Circuit and Supreme Court precedent to provide complete disclosure of the files in the

25  Government's possession, despite any court order to do so.  Stated differently, it is

26  unquestionable that the Governments' disclosure obligations under *Brady v Maryland* are not

27  triggered by a court order, but rather are certainly required upon actual on notice of the

28  exculpatory value of the evidence.  The United States Supreme Court was unmistakably clear

1  that an assertion by the Government that a party's claims are unbelievable, cannot serve to

2  deprive that party to prove his claims with the evidence.  If the Defendants do not want to

3  produce those files, then they must face the legal presumption that the evidence would have been

4  favorable to Plaintiff.

5      180.   Until such time as the trial of this matter, for the reasons set forth in this

6  complaint, Defendants should be enjoined from enforcing against Plaintiff, the 200-foot

7  residency restriction under Proposition 83, to mitigate Plaintiffs' ongoing harm.

8

9      **WHEREFORE,** Plaintiffs request the immediate issuance of a temporary restraining

10  order, followed by a preliminary injunction, preventing Defendants and their respective agents,

11  employees and representatives from enforcing the 2000-feet residency restriction under

12  proposition 83 until such time as the Government complies with its discovery obligations in this

13  case, and in the case of *Blazevich v United States*, 03cv1346-IEG.  .  Plaintiffs further demand

14  judgment against the Defendants, and each of them, jointly and severally, and the individually

15  named Defendants in both their official and individual capacities, on the counts and causes of

16  action indicated previously set forth, as follows:

17

18      1)  For special damages according to proof;

19      2)  For general damages according to proof;

20      3)  For punitive damages;

21      4)  For prejudgment interest at the legal rate;

22      5)  For attorney's fees pursuant to statute;

23      6)  For reasonable attorney's fees according to proof;

24      7)  For an immediate stay of enforcement of the 2000 feet residency restriction
         under Proposition 83 against Plaintiff;

25      8)  For an Order to Show Cause why relief with respect to the 2000 feet residency
26          restriction should not be granted;

27      9)  For an order to temporarily and permanently enjoining the Government from
         enforcing the 2000-feet residency restriction under Proposition 82;

28      10) For an order declaring the rights of parties; and

1           11) For an order granting any and all other relief as this Court deems
2               proper.

3

4

5   Paul Blazevich                10 MAR 08

     Plaintiff *in propria persona*     Date

6

7

8   E. Blazevich BY PAUL BLAZEVICH     10 MAR 08

9   Plaintiff *in propria persona*     Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Paul Blazevich, ~~E. Blazevich~~

**(b)** County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS

United States of America, United States Air Force, Office for the Southern District of California, Barbara Major-Gluck, et al.

County of Residence of First Listed Defendant **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**08 CV 450 WQH WMc**

Attorneys (If Known)

Karen Hewitt, United States Attorney
880 Front Street, San Diego, California 92101

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL INJURY** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | ☐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | | | |
| ☐ 441 Voting | **PRISONER PETITIONS** | | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | | |
| ☒ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1346

Brief description of cause:
Complaint to redress illegal witholding of evidence

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE **Irma Gonzalez**     DOCKET NUMBER **99cr0471 and 03cv1346**

DATE
10 MARCE

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

